Thebaut and Glazier vs. Canova, et. als.—Syllabus.

## BARTOLO THEBAUT AND FRANKLIN GLAZIER, APPELLANTS, VS. ANTONIA A. CANOVA, ET ALS., APPELLEES.

1. The Act of the General Assembly, approved 24th January, 1851, providing for the transfer of a cause which may be *pending* in one Circuit to another adjoining Circuit, in cases in which the Judge of the Circuit in which the suit may be brought is disqualified from interest or any other cause from hearing and determining the same, is not in conflict with the 4th and 6th sections of the 5th article of the Constitution of this State, but in aid thereof, and remains in full force and effect.

2. There is a manifest difference in respect to the time when a cause may be said to be *pending* in chancery proceedings and common law actions.

3. In proceedings in chancery, when the bill has been filed with the Clerk of the Court, the cause may be said to be *pending*, which means nothing more than "remaining undecided."

4. After the bill has been filed, neither the complainant nor his solicitor can take it from the files of the Court, alter or destroy it, without the consent of the Court. It becomes, from the moment it is filed, under the control of the Court and in the custody of its officer.

5. After bill filed, an injunction may issue upon application to the Chancellor without waiting for the service of the subpœna. For the purpose of all orders which he may properly make "*ex parte*," the cause *is pending before him.*

6. In common law actions, the suit is *pending* from the time of the service of the writ. Any time before service the plaintiff or his attorney may recall and control it.

4

7. An injunction and subpœna may be served on the defendant at the same time, and it is often important to the ends of justice that the defendant should not know of the issuing of an injunction until it is served upon him.

8. It is no error that the injunction and subpœna is served by the Sheriff of another Circuit, other than that from which these writs issued. By the statute they may be served by a private person, and "*a fortiori*" the service is good when made by a sworn officer of the law.

9. In the case of an injunction, if the defendant obtains a knowledge of its contents, and of its having been granted, no matter how he gets his information, he is as much amenable to the law for the violation of its mandate as if the writ had been regularly served upon him by the proper officer of the Court.

10. When a party appears and answers a bill, he waives all objection to the irregularity of the service of the subpœna.

11. The Chancellor may retain an injunction that has been granted "*ex parte*," to allow the party to amend his answer, but when the cause comes before this Court on appeal, it is the duty of the Court to examine into the whole record, and to retain or dissolve the injunction or dismiss the bill, as the very right and justice of the case may require and demand.

12. Before an injunction will be granted "*ex parte*," and before the hearing on the merits to restrain a nuisance, it must be shown to be a case of urgent necessity, or one in which irreparable mischief will be produced if the aid of the Court is denied.

13. If the bill sets forth such a state of *facts* as shows the thing sought to be restrained is in itself a nuisance, the Court will grant a temporary injunction in the first place, until the parties can have a hearing at law.

14. If the thing sought to be restrained is not unavoidably and in itself noxious, but only something which, according to circumstances, may prove so, the Court will refuse to interfere until the matter has been tried at law.

15. In order to justify the interposition of the Court, the injury must be irreparable to property or material to the comfort or the existence of the plaintiff; unless this can be shown, the party is left to his remedy at law.

16. The jurisdiction of Courts of Equity over nuisances by injunction, though now unquestioned, is nevertheless of recent growth, and Courts of Equity are slow to interfere in cases of doubtful right with the free use and enjoyment of property by its owner, as his interest, taste or inclination may direct.

Thebaut and Glazier vs. Canova, et. als.—Argument of Counsel.

17. The bill must state *facts* and not opinions. There must be something more than the opinion of the plaintiff, however solemnly affirmed, to authorize the interposition of the Court by injunction.

18. It does not appear that a steam mill, if put into operation, would unavoidably and in itself become a nuisance, and the allegations in the bill that such would be the case only amount to the expression of opinion by the plaintiffs, upon which the Court should not retain the injunction, *but* not leave the parties to their remedy at law.

This case was decided at Tallahassee.

Appeal from Suwannee Circuit Court.

A statement of the case is contained in the opinion of the Court.

*James A. Peden* for Appellants.

The record presents the following facts:

1st. That this whole proceeding, up to the time of serving the paper called an injuuction on Thebaut by the Sheriff of Duval, was *ex parte*, secretly done, without subpœna, notice or bond given.

2d. There was neither notice of injunction nor service of subpœna, or any pretence of service, until the service of the injunction June 4th, 1866.

3d. The bill is marked, filed in Duval, though no subpœna served. The bill was then carried to Nassau and filed there; then an injunction was issued there by the clerk of *Nassau county*, in another Circuit; then the injunction returned to Duval and filed there, and the injunction and subpœna were *then* served on Thebaut, which was the first notice he had of the suit—June 4th, 1866.

Special injunction shall be granted only upon due notice to the other party. See Rule 55, page 34 of Practice in Courts of Equity, adopted by this State.

The subpœna was not served before the injunction issued, and there was no notice of the application for injunction. Both omissions were fatal to the suit if properly taken and not waived. They were properly taken and not waived.

A notice was given to J. P. Sanderson, solicitor for complainant, that on the 12th June, or when the Juge should appoint a time for hearing the same, I should move to dismiss the proceedings for want of jurisdiction and irregularity, and to vacate the order for injunction or other order issued in this cause, and failing this, move to dissolve the injunction, &c.   See notice of record in this case.

On the hearing, the motion covering the whole exception was filed and special appearance entered for this purpose, thus: "On this day comes James A. Peden for respondents, and reserves all legal exceptions to the proceedings and jurisdiction, and moves to dismiss and vacate the order, &c." See motion of record in this case.

These exceptions were taken and the Court requested to note them, and they were considered, as appears by the opinion on file in this case.

The above exceptions were received by the Judge and the motion to dissolve was heard at the same time, in accordance with notice to Sanderson, solicitor for complainant.   See notice of record.

On the hearing, the motion to dissolve the answer was then read as *affidavit*, (see motion of record,) together with the affidavit of Thebaut, who was then the only party before the Court.

To this answer the complainant's solicitor *excepted*, which was irregular, and the exception of no value, as the answer was only in as *affidavit* on the *motion to dissolve ;* but even if the exceptions were regular, they do not *specify* to *what parts* of the answer they except.   See Daniel's Chancery, page 195.

If these answers are treated as *answers* and not *affidavits*, the bill should have been dismissed, because they deny the material facts set up by the bill, and there is no exception to them and no replication.

At this time a subpœna was ordered for Glazier, the other

Thebaut and Glazier vs. Canova, et. als.—Argument of Counsel.

defendant, who had not been served and was not before the
Court. His answer was ready and I filed it and read it with
his affidavit on the motion to dissolve. To all these irregu-
larities I excepted, and requested the Court to note them,
but they do not appear on the record; but they appear, by
the opinion of the Judge, to have been considered and over-
ruled, and are thus presented to this Court for its considera-
tion.

The law of January 24th, 1851, having reference to the
transfer of suits to another Circuit, p. 24, § 1, pamphlet
laws, provides that whenever any cause may be pending, "a
suit is pending upon the return of the subpœna served." Rule
16, U. S. Circuit Rules, p. 11; Thompson's Diggest, p. 453.

A cause cannot be pending until there is some one in
Court, either by the usual process or by publication or cita-
tion. This is shown by the 2d section, which refers to wit-
nesses. See Sec. 2. It refers to costs accrued.

The 4th section of this law refers to the " duty of a Judge,"
a duty appertaining *to his office*, to-wit : a ministerial duty.
The granting of an injunction is not a duty. It rests in
" discretion." A duty is imperative, a discretion is not. The
first section refers to the transfer of suits pending to another
jurisdiction. The 4th section refers to some duty to be per-
formed in vacation, required within the Circuit, (county,) and
the Judge substituted may do such duty, either within or
without the Circuit where it is intended to operate. Un-
der section 1, if a suit which was pending was transferred
and heard by a Judge of another Circuit, the execution or
other process would require to be issued upon the decree or
judgment enrolled or recorded in the Circuit whence it
issued, *where it was pending* when transferred, and the in-
junction should issue from the Clerk of that county. Under
the 4th section, whatever was done, either within or without
the Circuit, should be executed in the Circuit where the
duty is required, and the process should issue from the Clerk

of that county. Sheriffs are ministerial officers in their respective *counties*, and in their counties only they execute process issuing from the clerk of their counties. It is a personal privilege to be served in the county of one's residence. There is no statute which authorizes one Sheriff to serve process of another clerk, except in the case of Orange and St. Lucie counties, and the foreclosure of mortgage under the act of 1851, and defendants residing in different counties. Thompson, 377. In Orange and St. Lucie the Sheriff of each county may execute. Thompson's Digest, page 61, clause 2.

The Sheriff of Duval county could not therefore serve this injunction, which was issued by the clerk of Nassau county, and the exception was properly taken by the motion to dismiss and discharge and vacate the whole proceedings. (See record.) An injunction is local and should be issued only from the clerk where it is granted, and be served by the Sheriff of the county where it is issued. An injunction from the Supreme Court would be sent to the clerk where it was to be executed and served by that Sheriff. Even if the respondent Thebaut had been in the county of Nassau, this injunction would be inoperative, because the *locus in quo* must be within the absolute jurisdiction of the Court, (Circuit.) The Judge of one Circuit could not punish for contempt in another Circuit. See 2 Story's Equity Jurisprudence, p. 63, top page 6 ed'n.

The Judges are not authorized by the Constitution to sit in another county. Art. 5, Sec. 4, page 134 of the late Constitution, 1845, provides, that the State shall be divided into Circuits, and the Judge elected to reside in the Circuit and hold a court at such times and places as may be prescribed by law. The Judges of the several courts may hold courts for each other, either for the entire Circuit or part of Circuit, and shall do so when required. A court certainly cannot be held in Nassau county for Duval county. They may

Thebaut and Glazier vs. Canova, et. als.—Argument of Counsel.

exercise jurisdiction in writs of *habeas corpus* in *any* Circuit. The first part of this clause restricts them to their Circuit and counties. The second permits them to hold Courts for each other in their Circuits or parts of Circuits; but no Judge can hold Courts for another Judge out of that Judge's own Circuit, to-wit: in Nassau county for Duval county. They have jurisdiction co-extensive with the State in writs of *habeas corpus.* Constitution, art. 6, p. 34. "*Inclusio unus est exclusio alterius.*"

Jurisdiction in writs of *habeas corpus* may be exercised in another Circuit, and no other jurisdiction.

The 7th section of the Constitution provides for separate Equity Courts, but until then the Circuit Courts have jurisdiction, to-wit: in their Circuits.

A bill for injunction is a suit, and requires process to be served on parties. In this case it involves a fact, and one of a criminal nature, and tries it without a jury. See Constitution.

This statute transferring suits is of an extraordinary character, and will be strictly construed. "When rights are infringed, when fundamental principles are overthrown, when the general system of the law is departed from, the legislative intention must be expressed with irresistible clearness to induce a Court of Justice to suppose a design to effect such objects." United States vs. Tichee, et al., assignee of Blight, 1st con'd Reps.

The statute of the State provides a remedy and gives a trial by jury. See Title Nuisance, Thompson's Digest.

If this was a Court, the Circuit Courts shall always be open for granting injunctions. Thompson, p. 453.

When the Judge grants an injunction it is not therefore a Court. It was held in one Circuit for another. The power given to the Judge is to hold Courts for each other in their Circuits or parts of Circuits. Art. 5, clause 6, p. 134, Constitution.

The sovereign power of jurisdiction may be vested in certain Courts, that is Judges sitting as *Courts*, not as Judges, and in Justices of the Peace.

The Constitution draws the distinction between "Judges" and "Courts." The Judges may hold Courts for each other. Where? In their Circuits or parts of Circuits? Certainly not *out* of their Circuits or parts of Circuits. See Constitution, clause 6, p. 134.

When Judge Long sat in Nassau county and heard this application for injunction, did he sit as a Court? If so, he held Court for Judge Putnam in Suwannee Circuit, and out of Judge Putnam's Circuit. If he did not sit as a Court, he sat as *Judge* or *Chancellor* in another Circuit, and undertook to do that which the Constitution does not authorize. The only judicial act which a Judge can do out of his Circuit, which is to operate in another Circuit, is to issue writs of *habeas corpus*. The Legislature cannot confer the power. Even if it could do so, this case is not within the provisions of the 1st section of the act of 1851. Because there was no suit pending when it was removed. Nor by the 4th section, because, to hear a cause and grant an injunction, was not any duty pertaining to his office, but a judicial determination for the administration of justice.

A cause is a contested question before a Court of Justice. It is a suit or action, civil or criminal. Bouvier's Law Dic'y, title *Cause*.

A question could not be *contested* until there was some one in Court to contest it. There was no service in the case until after the suit was removed to Nassau county. It was not in fact the removal of a suit pending, but the commencement of an original suit in another county and circuit.

A "duty," in the sense in which it is used in the 4th section of the act of January 24th, 1851, page 124, is an official requirement. Section 4 of the statute is auxiliary to section 1. The suit pending is removed to another circuit for trial,

Thebaut and Glazier vs. Canova, et. als.—Argument of Counsel.

and any interlocutory orders or rules necessary where the Judge removing the cause is interested, may be done by the Judge of the other circuit to which it is removed. Any other matter that may arise at Chambers, either before or after the pending suit is removed, may be done by another Judge. A case may arise in which one judge, properly qualified, dies or is removed, and another Judge, disqualified from interest or any other cause, is elected for the same circuit, and some such duty is required to be performed at Chambers; then the case would be properly one for the exercise of this power at Chambers by another Judge. But this statute is unconstitutional, and the order granting the injunction is null and void.

This proceeding is in effect a change of venue, and the law under which it is taken arose under the Constitution of 1845. This Constitution is recognized as the Constitution in force when the present one of 1865 was framed. The ordinance under 1865 adopts the laws and ordinances not repugnant to the Constitution of the State. See art. 17, par. 1, page 146, (196?,) which were passed since the 10th session of 1860, but does not adopt the laws hitherto existing under 1845, because they continue to exist. The State government is *treated* as suspended during the time between the ordinance of secession and the rehabilitation of the State under 1865, in amendment of 1845, and the adoption of the laws under 1861.

The other view would exclude all other laws from the statute book, except those adopted by the Constitution and ordinances of 1865. The Constitution of 1845 is the test of the constitutionality of the act in question. When this Constitution was passed, there was a provision in a statute for a change of *venue*. When the Judge was interested the case was transferred to another circuit. Thomp. Dig., p. 333, act Nov. 23, 1828, sec. 37, Duval 96.

This law was made under the Territorial organization. The Constitution of 1845 arranged the State into circuits and appointed a Judge for each circuit, and provided that the "Judges" may hold Courts for each other, and *shall* do so when required *by law*. See Constitution 1845, articles 5 and 6.

The first Legislature convened after the Constitution, passed an additional act providing that the Judge who was counsel in a cause should not try it, but that it should be continued until some other Judge could try it. See Thomp. Dig., p. 55, act July 22, 1845.

The provision in the Constitution for trial by another Judge and the clause in the act of 1845 were substituted for the act of 1828; by the latter act the cause was transferred to another circuit or county; by the Constitution *another Judge is transferred* to try the cause in the same county. This was in accordance with the local right to be tried in their respective counties. The Judges *may* hold Courts for each other and *shall* do so when required by law. The act of 1851 was made under this clause of the Constitution, but the Legislature exceeded its powers. It transferred cases to another circuit. The clause requiring the Judges to hold courts for each other, "and shall do so when required by law," certainly meant "shall do so" *in the Circuit* where the cause was pending. The Constitution localizes a trial and confines it to a circuit, and sends another Judge to a circuit to try certain cases. By the Constitution the Judges may hold courts for each other, that is, such courts as it contemplates, in the counties, and at the times and places appointed by law. But it nowhere authorizes Judges to perform any other duties except, perhaps, those subsequent duties that might become incidental in consequence of the holding of such court, and certainly nowhere authorizes such duties *out of the county*. Could a Chancellor of Duval county sit and hear an application for injunction in Nassau county, or

one in Nassau county make an order in a cause pending in Duval county? No. Because the only jurisdiction a Judge has out of his circuit is to hold *Courts* for another Judge.

When a Judge of the Circuit Court sits as Chancellor for granting an injunction to stay waste, for instance, he sits in his own circuit and exercises jurisdiction there; and if the Judge of another circuit may exercise this judicial discretion for another Judge, he must do it in the circuit where it is to operate, and the cause cannot be transferred to another circuit, as has been done in this case.

This act of 1851 is therefore in conflict with the Constitution of 1865.

The Constitution of 1865 provides that the Judges may hold Courts for each other, either for the entire circuit or part of circuit, and shall do so when required either by order of the Governor or Chief Justice of the Supreme Court; not as in that of 1845, *when required by law.* This act of 1851 was passed during the existence of that clause, *when required by law*, under the impression that it was authorized by that clause.

The Constitution of 1865 requires Judges to hold Courts at such times and places within circuits *as may be prescribed by law*, to-wit: in their circuits; and the Judges may hold Courts for each other. Where? In their circuits, and they shall do so when required by the order of the Governor or Chief Justice, not as in 1845, *when required by law.*

This amendment provides for the omitted cases. Under this Constitution, the Governor or Chief Justice may make such order for the holding Courts when necessary. It nowhere authorizes Judges to hold *Courts*, or to hear *applications* for injunction, or other orders out of their jurisdiction. They have jurisdiction out of their circuits in certain cases only—*habeas corpus*, &c. The Circuit Courts exercise separate equity jurisdiction. Art. 5, clause 7, p. 134. Where? In their respective circuits—not foreign jurisdiction out of

their circuits over subjects within another circuit. Such exercise is contrary to all antecedent usage.

This cause was already transferred to Nassau county by order of Judge Putnam. The order for the injunction was made under the order transferring the cause, the Judge being interested. The proper course would have been to have applied to have another Judge appointed to hear the case in the county, or to the Supreme Court, under clause 2, article 5, p. 134, Constitution 1865. There was no jurisdiction derived from the order transferring the cause, and the proceedings are irregular and void.

The bill does not present such a state of facts as to authorize this injunction, because there is a remedy at law. See title Nuisance, Thompson's Digest, p. 502, and City Ordinances in relation to steam mills and wooden buildings; and see also resolutions of City Council in relation to the erection of this mill, referred to in answer of defendants, read as affidavit, and affidavits on file.

To sustain this bill it must appear fully from the facts that there is not another remedy. See Thompson's Digest, title Nuisance, above quoted.

To restrain an irreparable injury to a great portion of the citizens, and that portion who assert the injury is so great and considerable as to overbalance the public benefit which would accrue to the city from increased revenue from taxes and public convenience.

That there exists the public necessity for its exercise, and that the necessity must be such an one as is based on a great and considerable mischief to the material and useful engagement of property.

The exercise of this right to erect a mill is consecrated and authorized by antecedent usages of the city in this respect.

The running of steam cars in the streets is not a nuisance. 2d Kent, note A, p. 397, 398.

Injury overbalanced by public good. *Ib.*, 398.

There is no public necessity for this exercise of power by injunction—no inherent injury or damage to individuals—no public injury would ensue. Waterman on Injunction, p. 259, vol. 2.

It is more beneficial to the town than injurious to individuals, therefore should not be enjoined. *Ib.*, note 2, p. 259.

Not a great and immediate mischief to the material and useful enjoyment of property. *Ib.*, p. 270, note.

It is not such an injury as will not permit delay. The question is one of fact, a question which involves the use of property, and should be tried by a jury. There is such a a remedy. *Ib.*, vol. 2, p. 259; Thompson's Digest, "Nuisance."

Apprehensions of individuals as to becoming Nuisance, though never so reasonable, not sufficient. *Ib.*, p. 249, note 2.

The case must be clear and determinate, without conflicting evidence. *Ib.*, 259–3, note 2.

A diminution of the value of property, without irreparable mischief, no ground of relief. *Ib.*, p. 259–6.

Must be a nuisance at law. Fears of mankind not sufficient. Small-pox hospital, lime kiln, not sufficient. *Ib.*, pp. 263, 264.

Nor candle factory, *nor nuisance only to a few* inhabitants, and depends on the member of houses and concourse of people—matter of fact to be tried by a jury. *Ib.*, 264, note.

And when the public health not concerned, the public good may be taken into consideration. *Ib.*, 264–2.

If the thing itself is a nuisance, chancery will interfere; but if *not unavoidably and in inself* noxious, but may only *become so*, chancery will not interfere until the matter has been tried at law. *Ib.*, 267, note; 269, note.

An owner of a vacant lot of land, which is intended for house lots, not entitled to injunction to restrain noxious

trade, whereby value is diminished. Waterman on Injunction, vol. 1, p. 11, note; Dana vs. Valentine, 5 Metcalf Reps. 8.

The Court will not, except in very peculiar circumstances, suspend the erection of a public work before answer. *Ib.*, p. 10; Elmslie vs. Delaware & Schuylkill Canal Company, 4 Wheaton's Reps. 424.

Mere allegations of complaint, that irreparable damage or mischief will ensue, not sufficient. Facts must be shown to entitle to injunction. Strong *prima facie* case. *Ib.*, p. 10, Union Bank of Maryland vs. Poultney, 8 Gill & Johnson, 324.

A blacksmith's shop not a nuisance. *Ib.*, 292, note.

Injunction only granted when great and immediate mischief, material injury to property. *Ib.*, 270, note.

Must be a case of strong and imperious necessity, or the right must be previously established at law. *Ib.*, 270, note.

When greater benefit result to the public than injury, injunction should not be granted. Rex vs. Russell, Barnwell & Creswell, English Com. Law Reps., vol. —, 267.

Where a bill is filed by a private person asking for relief by way of *preservation*, the plaintiff cannot maintain a stand in a Court of Equity, unless he *avers and proves some special injury*. City of Georgetown vs. The Alexandria Canal Company, XIII Peter's Supreme Court Reps., p. 98.

Injunction granted in interminable and oppressive litigation. 551–2, Black's Sup. Ct. U. S. Reps.

Diminution of the value of the premises, without irreparable injury, no ground for interference. *Ib.*, p. 552.

A strong *prima facie* case. *Ib.*, 552.

Jurisdiction applied only when right clearly established. *Ib.*, 552.

Must be a case of strong and imperious necessity, or right previously established at law. *Ib.*, 552.

If the evidence be conflicting, and the injury doubtful, this extraordinary remedy will be withheld. *Ib.*, 552.

After right established at law, will not as *of course* grant *injunction*, only according to the true equity of the case. *Ib.*, 553.

Time, place and circumstance are elements in the elimination of this fact. It should be most cautiously interfered with. A private right of enjoyment is restrained. A structure on Broadway would be very different from one in Jacksonville—a crowded city from a thinly peopled place like this. Machinery is always wanted on the water side. The wharves of this and other cities are the proper and convenient localities for such manufactories, and the legislation of the City Council looks to this result. See Ordinance relative to fire-proof buildings.

Common and Special Injunctions—difference between. 2 Story on Equity Jurisprudence, p. 230, sec. 892.

Injunction only granted where facts clearly made on determinate and satisfactory evidence. 2 Story's Equity Jurisprudence, p. 262, sec. 924, and note 4 and authorities cited.

When the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the Court will refuse to interfere until the fact is tried at law. See opinion of Lord Brougham and authorities cited. *Ib.*, 2 Story, note 1.

More diminution of value of property no foundation for relief. *Ib.*, p. 244, sec. 925.

Railroad not *per se* a nuisance. Bonaparte vs. Camden and Amboy Railroad Company. 1st Baldwin Circuit Court Reps., p. 231, and authorities cited in 2d Story's Coms. on Equity.

Whether it is a public nuisance or not depends on whether it is injurious to the public. Pennsylvania vs. the Wheeling Bridge Co., p. 13, Howard's Sup. Ct. R. 591.

Nuisance or no nuisance; is dependent solely on the character of the act complained of, as being noxious or beneficial to the public. 13 Howard's Reps. Sup. Ct. U. S., p. 608.

A bill in equity, to abate a public nuisance, filed by one who has sustained special damage, has succeeded to the former mode in England of an information in Chancery on behalf of the Crown. A private party sues as a public prosecutor, and, unless he shows special damage, he cannot be heard. Mississippi and Missouri Railroad Co. vs. Wood, 2 Black's Sup. Ct. U. S. Reps., 1862, p. 492.

The same rule applies in Chancery to abate a nuisance as if the party was indicted for a nuisance. If the jury doubted, they would be *bound to acquit.* The same rule applies in Chancery. *Ib.,* 495.

A Court of Equity will interfere when the injury, by the wrongful act of the parties, will be irreparable—as loss of health, loss of trade, destruction of the means of subsistence, or the ruin of property must ensue, (*ib.,* 551,) and will give its aid to prevent oppressive and interminable litigation, multiplicity of suits, which cannot be prevented otherwise.

Diminution of value of property, without irreparable injury, no ground for interference. 2 Brown's Chancery cases, 65; 16 Vesey, 392; 3 Mylne & Keen, 199.

Strong *prima facie* case of right must be shown. *Ib.,* Black Sup. Ct. U. S. Reports, vol. 2, 186, 552. Poise vs. Winnepissiogee Cotton and Woolen Factory.

This jurisdiction (to restrain) only applied when right is clearly established—when no adequate compensation can be made in damages. *Ib.,* 552.

Strong and imperious necessity, or right previously established at law. *Ib.,* 552.

If injury doubtful, or evidence conflicting, this extraordinary remedy withheld. *Ib.,* 552, and other cases.

After right has been *established at law,* Court of Chancery

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

will not, as *of course*, interfere by injunction.   It will consider all the circumstances of the case, the consequences of such, and the real equity of the cases.   *Ib.*, p. 553.

Railroad through a city not a nuisance.   8 Florida Reps.

If the mill is for a public purpose and for a public benefit, in a reasonable place, then if it were not indictable, it will not be suppressed.   See Black's Reports Sup. Ct. of the U. S., vol. 2, 495.

*Fleming* on the same side.

*J. P. Sanderson* for Appellees.

DOUGLAS, J., delivered the opinion of the Court.

In this case a bill was filed in the Circuit Court for Duval county, praying an injunction might issue to restrain the defendants from erecting a steam mill within the corporate limits of the City of Jacksonville.

The complainants allege in their bill, " That if the defendants are permitted to go on and erect and complete said steam mill, and occupy the same, the injury to complainants and their families respectively, as well as to their property, will be irreparable, and will inevitably obstruct the free use of their property, so as essentially to interfere with the comfortable enjoyment of life and happiness.

" That the constant noise and smoke occasioned by the use and employment of the steam mill and machinery in the immediate vicinity of their property, used as residences for their respective families, will inevitably result in the loss of comfort and happiness of your orators, respective families, and tend to render the air around their houses unwholesome and disagreeable.

" That the mill and machinery, if completed and operated by defendants, will cause irreparable injury to their property by greatly reducing its value, endangering it by fire and

sparks, and rendering it uninhabitable by their families from the constant annoyance from noise and smoke."

These are the material allegations in the bill upon which the injunction was asked and granted.

Upon the filing of the bill, and before the subpœna was issued and served, a petition was presented to the Judge of the Eastern Circuit, who was a party complainant in the bill, stating and setting forth that fact, and asking that such an order might be made in the premises as would enable the complainants to have the suit tried by a competent tribunal.

Upon the hearing of this petition, an order was made by the Judge, directing the transfer of the cause to the next adjoining Circuit, and ordering the Clerk of the Circuit Court for Duval county to transfer the papers in the cause to the Clerk of the Circuit Court of Nassau county, Suwannee Circuit.

On the hearing of the cause, the Judge of the Suwannee Circuit granted an injunction in accordance with the prayer of the bill, restraining the defendants from constructing and erecting the steam mill, and directing the Clerk of the Circuit Court of Nassau county to issue a writ of injunction for that purpose.

At a subsequent day, the parties complainants and defendants appeared before the Judge of the Suwannee Circuit with affidavits and other proofs, one of the defendants having answered the bill, and the defendants thereupon moved the Court to dissolve the injunction heretofore granted in the cause.

This motion was resisted upon the ground that one of the defendants had not answered the bill, and that the answer filed by the other defendant was evasive, uncertain and insufficient. Upon the hearing of the cause, the Judge refused to dissolve the injunction, and ordered and decreed, "That the injunction do continue in full force for the present, and that the defendants be allowed to amend their answer."

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

From this order and decree of the Court below an appeal is taken to this Court.

The first objection and ground of error taken in the argument at bar is, that at the time the order was made by the Judge of the Eastern Circuit to transfer the cause to an adjoining Circuit, there was no suit *pending* in Duval Circuit Court as contemplated by the 1st section of the Act of the General Assembly, approved 24th of January, 1851, which provides, "That whenever any cause may be pending in any of the Circuit Courts of this State, and the same cannot be heard, tried or determined by reason of the disqualification of the Judge of such Court to hear and determine the same, it shall be lawful for either party thereto to present his petition to such Judge, praying that said cause be transferred to some other Circuit Court; and it shall be the duty of the Judge so disqualified to have said cause removed to some Court in the next nearest Circuit." What are the disqualifications of a Judge is shown by the Act of the General Assembly approved Dec. 4th, 1862, which provides, "That no Judge shall sit or preside in any cause to which he is a party, or in which he is interested," &c.

It is urged, that as the Constitution of this State, by the 4th and 6th sections of the 5th Art. provides "there shall be a Judge for each Circuit, who shall, after his election or appointment, reside in the Circuit for which he has been elected or appointed, and that the Judges of the several Circuits may hold Courts for each other, either for the entire Circuit, or for a portion thereof," that these provisions of the Constitution limit his powers, and require that the Judge shall only act in the enumerated cases; that the provisions of the Act of the General Assembly, approved the 24th of January, 1851, which give to a Judge the right to transfer a cause which he is disqualified from trying, from his own Circuit to the Circuit of another Judge, are in conflict with the 4th and 6th sections of the 5th Art. of the Constitution,

and are therefore inoperative and void; and that in all cases in which the Judge of a Court is disqualified, another Judge must be called to the Circuit under the provisions of the 6th section of the 5th Art. of the Constitution.

We cannot give our assent to this interpretation of the 4th and 6th sections of the 5th article of the constitution. They do not deny the power and authority to the Circuit Judge to try and determine any cause that may be brought before him in his own circuit, if the subject matter is within the jurisdiction of the court; and the question of jurisdiction is the appropriate object of legislation in all cases, when not restrained by constitutional inhibition.

The 6th section of the 5th article of the constitution provides under what circumstances and contingencies the acts of the Judge shall be valid and binding, when performed in another circuit other than that to which he has been elected or appointed. This provision of the constitution was intended to secure the more speedy administration of justice, and to prevent vexatious delays. It was introduced for the benefit of suitors in court, when the Judge was disqualified from any cause from holding the court in his circuit or a part of his circuit.

The act of the 24th January, 1851, "providing for the more effectual administration of justice in the courts of this State," by authorizing the transfer of suits to another circuit, when the Judge of the circuit in which they arise is disqualified from trying them, is not in conflict with the 6th section of the 5th article of the constitution, but in aid thereof, and remains in full force and effect.

The Judges in such cases are not acting for each other, but for the citizen, who has presented his case before the court for its adjudication. The act of the General Assembly, before referred to, has conferred the necessary power and jurisdiction as it might rightfully do, and this power

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

and jurisdiction is not restrained or denied by the 6th section of the 5th article of the constitution.

In the case under consideration, the petition for the transfer of the cause to another circuit was regularly filed under the provisions of the act of the 24th January, 1851; the Judge of the Eastern Circuit being one of the parties complainant in the bill, was thereby disqualified from sitting in the case and hearing and determining the matter in controversy; and the order for the transfer of the cause to an adjoining circuit was properly made.

It is urged in the argument at bar as error that the order made by the Judge of Duval Circuit Court for the transfer of the cause to the Suwannee Circuit is illegal and void, because at the time the order was made there was no suit *pending* in Court as contemplated by the act of the 24th January, 1851; that although the bill had been filed, no subpœna had issued and been served, and that no suit could properly and legally be said to be pending until after the service of the subpœna.

We have given this matter much careful consideration, and have been forced to the conclusion that there is a manifest difference in respect to the time when a suit may be said to be *pending* in Chancery proceedings and in common law actions.

It is clear that in a suit in equity, upon the filing of the bill, an injunction or other restraining order may issue, if the same is prayed for, and this before subpœna has issued or been served. Is the cause then pending after injunction issued and before subpœna served? The bill cannot, after it is filed, be amended or withdrawn from the files of the Court and custody of the clerk, without the permission and order of the Judge. Is it not, therefore, pending within the meaning of the act of the 24th January, 1851?

By the 16th rule of practice in suits in equity in the Circuit Courts of the United States, which we have adopted,

it is provided " that upon the return of the subpœna as served and executed upon any defendant, the clerk shall enter the suit upon his docket as pending in the Court, and shall state the time of the entry." This rule is directory to the clerk as to the time he shall enter it upon his docket as pending in the Court, but for the purposes of the act of the 24th January, 1851, the suit is pending from the time of bill filed.

There is a statute in New Hampshire which provides " that where any *action is or shall be pending* in any Court of common pleas, or superior court of judicature in the State, and either party die before final judgment, the action or suit shall not thereby be abated," &c.

Our act of the 24th January, 1851, declares, " that when any cause may be pending in any of the Circuit Courts of this State, and the same cannot be heard, tried or determined by reason of the disqualification of the Judges," &c. There is no good reason for making a distinction between the legal effect of the language used in these statutes. The legal import of the words " *is or shall be* pending," as used in the New Hampshire statute, and the words " may be pending," as used in the act of the 24th January, 1851, is the same.

In the construction of the New Hampshire statute, their Courts have decided that, strictly speaking, an action cannot be said to be pending until the writ is sued out and served. Until then, the writ is under the control of the plaintiff or his attorney, and may be altered and amended as he pleases, or even destroyed; but after it is served, any alteration, without the leave of the Court, is a forgery. By the practice of New Hampshire, the writ always contains the declaration in which the cause of action is set forth at length, and the service of the writ is the commencement of the action: Clindenia vs. Allen, 4 New Hamp. Rep., 385.

It is believed that in suits at law the same interpretation should be given to the words " may be pending," used in the

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

act of the 4th January, 1851, as is given by the Courts of New Hampshire to the words " is or shall be pending," employed in their statute; and that, in suits at common law, the action would not be considered as pending until after the service of the writ.

Under the statute of New Hampshire, their Courts have held that in petitions for divorces, partition, &c., they may be considered as pending in Court as soon as they are filed with the clerk.   4 New Hamp. Rep., 386.

In proceedings in Chancery, when the bill has been filed with the clerk, the suit may be said to be pending; which means nothing more than " *remaining undecided.*"

It has passed beyond the control of the complainant or his solicitor, and neither of them may take it from the files of the Court, alter or destroy it, without the consent of the Court first obtained.   It becomes, from the moment it is filed, under the control of the Court and in the custody of its officer, the clerk, who is responsible for its safe keeping.

It is not questioned that an injunction may issue upon the presentation of the bill to the Chancellor after it has been filed and before service of the subpœna.   In many cases it is important to the ends of justice that the party defendant should not be apprised of the filing of the bill against him, and the granting of the injunction or other order; otherwise it would enable him to defeat the object of the bill and the relief asked, by removing property or doing other acts intended to be restrained and prohibited by the injunction or order of the Judge.   It cannot be that the Judge, in deciding on these grave and important matters, is doing so in a suit not pending before him.

We hold the true intent and legal construction of the statute to be, that in common law actions the suit is pending from the time of the service of the writ, and, in Chancery proceedings, it is pending from the time of filing of the bill with the clerk in his office.

It was contended by the appellant's counsel in the argument, as a ground of error, that the injunction and subpœna were served on the defendants at the same time, and that the service was made by the Sheriff of Duval county and not by the Sheriff of Nassau county, from the clerk of which Court the writs of injunction and subpœna emanated.

We see no error in this. We have already shown that a writ of injunction may issue upon the filing of the bill and before subpœna served, and there can be no legal objection that they are both served on the defendant at the same time. Nor can there be any valid objection that these writs were served by the Sheriff of Duval county. They might legally have been served by a private person, and, "a fortiori," the service is good when made by a sworn officer of the law.

In the case of an injunction, if the defendant obtains knowledge of its contents and of its having issued, no matter how he gets his information, he is as amenable to the law for the violation of its mandate as if the writ had been regularly served upon him by the proper officer of the Court. But if these objections ever had any force, they were waived by the subsequent appearance of the defendants, the filing an answer and contesting the suit, and it is now too late to set them up and assign them as error. If the defendants intended to rely upon these irregularities as error, they should not have appeared and contested the suit in the Court below.

It was contended on the argument at bar that the answer of the defendant was evasive, imperfect and not responsive to the bill, and for this reason the injunction was properly retained for a more perfect and unexceptionable answer. The Judge in the Court below may retain an injunction that the parties may amend their answer; but when the cause comes before this Court on appeal, it is the duty of the Court to examine into the whole record, and to retain or dissolve

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

the injunction or dismiss the bill, as the very right and justice of the case may demand and require.

If the injunction should be dissolved on the showing made by the bill and the proofs, regardless of the answer, then this Court will not retain the injunction in order that the answer may be made more perfect.

If the paper filed in this case, purporting to be an answer, is treated and considered as an affidavit, as was insisted in the argument it should be, then it is evidence of the facts set forth in it. If treated as an answer, though it be an imperfect and evasive one, it is still evidence of the facts so far as it goes, having been put in under oath, and may be taken into consideration by the Court in determining on the propriety of retaining or dissolving the injunction granted.

We now come to consider the most important question presented by the record, and that is, does the bill of the complainants and the proofs in the case warrant and require this Court to retain the injunction, or should it be dissolved and the parties left to their remedy at law, in order to establish such a state of facts as will justify a Court of Equity to interpose by injunction for their relief?

The proper solution of this question is not without difficulty, and will involve the consideration of the circumstances under which a Court of Equity should interpose by injunction in a case like the one before the Court.

It is not enough that a complainant should allege in his bill that the injury will be irreparable to himself or to his family or property, but he must show *facts*, to enable the Court to judge if the injury will be of the character stated, before he will be entitled to the interposition of the Court.

This branch of the equity jurisdiction has in late years been often invoked both in England and this country, and if there is a seeming inconsistency in the decisions of the Courts, as shown by the reported cases, it arises more from

7

the difficulty of applying the law to the variety of phases under which facts are presented to the Courts than from a want of well defined legal principles by which Courts of Equity are governed in such cases.

It is laid down as a governing principle to guide Courts of Equity that, before an injunction will be granted "*ex parte*," and before the hearing on the merits, to restrain a nuisance, it must be shown to be a case of urgent necessity, or one in which irreparable mischief will be produced if the aid of the Court is denied. The object of an injunction before answer is to preserve all things in their then condition, not to determine any by anticipation, or to undo or restore anything. 6 Pick. Rep., 376; Murdock's case, 2 Bland's Rep., 461.

If the thing sought to be restrained is in itself a nuisance, and it so appears from the *facts* set forth in the bill, the court will give its aid to stay irreparable mischief, and will grant a temporary injunction in the first place until the parties can have a hearing at law. But where the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere until the matter has been tried at law. 3 Daniel's Ch. Prac., 1850, and notes.

The authority of courts of equity, says Judge Story, to interfere by way of injunction in cases of private nuisance, is founded upon the ground of restraining irreparable mischief, or of preventing multiplicity of suits; and it is not every case which will furnish a right of action at law against a party for a nuisance, which will justify the interposition of courts of equity to redress the injury or remove the annoyance.

On the other hand, where the injury is irreparable, or where loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property may or will

ensue from the wrongful act or erection, in every such case courts of equity will interfere by injunction, in furtherance of justice and the violated rights of the party. Story's Eq. Jur., sections 925, 926; 16 Vesy, 342; 6 John. Ch. Rep., 46; 2 Swanst., 336.

In the case of the Earl of Ripon vs. Hobart, 3 Mylne and Reed, 169, Lord Chancellor Brougham, in delivering his opinion, says: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief without waiting for the result of a trial at law; and will, according to the circumstances, direct an issue, or allow an action, and, if need be, expedite the proceedings, the injunction being in the meantime continued. But where the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere until the matter has been tried at law. The distinction between the two kinds, erection or operation, is obvious, and the soundness of that discretion seems undeniable, which would be very slow to interfere where the thing to be stopped, while it is highly beneficial to one party, may very possibly be prejudicial to another."

It will be seen from these authorities that the true ground for the interposition of courts of equity by injunction not only is that irreparable mischief and injury will be done the defendant if the relief asked is not granted, but that, in a case where the facts clearly show that the act complained of is in itself a nuisance, the court will, upon an *ex parte* application, grant the injunction; and will in cases where the thing complained of may or may not prove to be a nuisance, according to circumstances, refuse to interfere until the matter has been tried in an action at law.

The jurisdiction of courts of equity over nuisances by injunction, though now unquestioned, is nevertheless of recent growth; and courts of equity are slow to interfere in cases

of doubtful right. The Lord Chancellor, in delivering his opinion in the case of the Earl of Ripon vs. Hobart, said: "The great fitness of pausing much before we intercept men in those modes of enjoying or improving their property, which are *prima facie* harmless or even praiseworthy, is equally manifest."

Courts with great reluctance interfere with the free use and enjoyment of property by its owner as his taste or his inclination may direct; and it is only in a case where it is clearly made out that this use and enjoyment is prejudicial and injurious to the rights of others, that it will lend its aid to restrain and abridge this free enjoyment. They should ponder long and consider well when their aid is invoked for this purpose, and especially should this be so where the thing to be stopped, while it is highly beneficial to one party, may very possibly be prejudicial to none.

We have already seen in the statement of this case what are the allegations made by the complainants in their bill as reasons why the erection of this steam mill should be enjoined and prohibited, and we shall now examine the evidence to see if, in accordance with the views herein expressed as to the law, the facts require that the injunction should be retained; for unless the facts show that the steam mill when erected will be in itself a nuisance, the injunction must be dissolved and the parties left to their action at law.

If the case stood upon the bill *alone*, which alleges that if the erection of this steam mill is permitted, irreparable injury will be done to the property of the plaintiffs, and that their health will be greatly endangered, and the comfortable enjoyment of life and happiness greatly abridged, it would still be a question of much doubt if the injunction should be retained.

The court will not interfere to restrain parties in the free use and enjoyment of their property, unless it can see clearly

Thebaut and Glazier vs. Canova, et. als.—Opinion of Court.

that the steam mill, if put into operation, would produce the effect alleged in the plaintiffs' bill, and would be such a structure as the defendants have no right to erect and can not erect without those mischievous consequences charged in the bill, which, upon equitable principles, should be not only compensated in damages but prevented by injunction.

It is not doubted that a court of equity has jurisdiction to prevent by injunction that sort of material injury to the comfort of the existence of those who dwell in a neighboring house, which may be produced by the exercise of unwholesome trades or business, and which injury is susceptible of proof. It was said by the Lord Chancellor, in the case of the Attorney General vs. Cleaver, 18 Vesey's Rep., 217, "that what was a nuisance, considered with reference to carrying on a trade, is a question of fact, which it is not very easy to determine." In such cases the court has the power to prevent, as well as to remedy, by its restraining order, and there must be something more than the opinion of the plaintiff, however solemnly affirmed, to authorize the interposition of the court.

Unless the court can see from the facts that the steam mill will, if put into operation, become a nuisance, the allegations in the bill that such would be the case only amount to the expression of opinion by the plaintiffs, upon which the court should not retain the injunction. It cannot be doubted that the steam mill will cause an increased noise in its vicinity, and also that its operation will produce smoke. These are facts susceptible of proof, but that this noise and smoke will be of a nature to cause irreparable injury to the property of the plaintiffs, or that it will endanger their health, or prove a material injury to the comfort of the existence of the plaintiffs who dwell in the neighboring houses, or that it will greatly abridge the comfortable enjoyment of life and happiness, does not so readily appear from the evidence in this case.

It is not every injury to property that will justify the interposition of a court of equity.

In the case of the Attorney General vs. Nichol, Lord Eldon said, "that a diminution of the value of the premises is not a ground for the interposition of this court." When the injunction is asked on the ground of a diminution of the value of property, the injury sought to be restrained must be such as to produce irreparable mischief, and for which no adequate compensation can be made by way of damages. 16 Vesey, 342; 18 do., 221; 19 do., 624.

In order to justify the interposition of the court, the injury must be irreparable as to property, or material to the comfort of the existence of the plaintiff; and, unless this can be established, the parties are left to their remedy at law.

As it is not every injury to property that will induce a court of equity to interfere, so neither will it do so for an imaginary injury to health or to the comfort of the existence of the complainant. The court must see from the nature of the thing complained of, that, if permitted, there will be a probability of loss of health or injury to the comfort of the existence of the plaintiff. In the case of the exercise of unwholesome trades in the vicinity of a plaintiff, courts have less difficulty in coming to a conclusion, but we are not prepared to say that the noise and smoke proceeding from a steam mill are as clearly injurious to health, and to the comfort of the existence of those who dwell in the neighboring house, as the business of exercising an unwholesome trade.

It may and doubtless will be that a steam mill in operation will cause some discomfort to those in close proximity to it, (and so would many other things which are not considered in law a nuisance,) but we do not see from the facts and proofs in this case that this discomfort is so apparent and of such a character as to come under the head of being a nuisance in itself, which should be injoined without a trial at law.

It appears from the proofs and was admitted in the argument, that the property of several of the complainants in the bill consisted of vacant and unimproved lots, upon which, it is alleged, they design building dwellings. It is now well settled that the owner of a vacant lot which, is intended for a house lot, is not entitled to an injunction to restrain the exercise of an offensive trade in the vicinity thereof, whereby its value is diminished; such owner has a complete and adequate remedy at law for the injury so caused. 5 Metcalf, 8.

In the case of Hart vs. the Mayor of Albany, 3 Paige's Ch. Rep. 210, 213, the Chancellor, in delivering his opinion, said : " If the evidence is conflicting, and the injury complained of and sought to be restrained is doubtful or contingent, that alone will constitute a good ground for withholding this extraordinary power of the court to interpose by injunction."

The evidence is very contradictory in this case, and the result of the affidavits on both sides unsatisfactory. The case stands before this court, not on the bill alone, but on the bill, answer and affidavits, and, after carefully considering the matters embraced in the bill, answer and affidavits, we are of the opinion that the plaintiffs have not presented such a case as calls for the interposition of a court of equity by injunction.

If the facts in this case showed that the erection of this steam mill would be attended with extreme probability of irreparable injury to the property of the plaintiffs, or that it would endanger their lives or health, or prove a material injury to the comfort of their existence, the court would feel itself bound to continue the injunction, for in such a case, clearly established, there can be no hesitation in saying an injunction would be granted. In this case there is no such satisfactory proof, and the court must act upon facts and not opinions, and these facts must clearly show the plaintiffs are entitled to the relief asked.

For the reasons herein stated, this cause is remanded to the court below, with instructions to dissolve the injunction heretofore granted.