ANNIE HOLKE et al., Respondents, v. HERMAN HERMAN, Appellant.

St. Louis Court of Appeals, February 12, 1901.

1. **Pleading and Practice**: REPLICATION.  The failure to file a replication is of no consequence if the case was tried as though the issues were made up.

2. ———: ———: PRACTICE, TRIAL: PRACTICE, APPELLATE. And in order to avail himself on appeal, of an omission to file a replication, the party excepting must stand on the pleadings; even when he moves for judgment in the lower court unsuccessfully he can not introduce his proof as though a reply were in, and, after defeat on the merits, profit by an erroneous ruling on the motion.

3. **Nuisance**.  A pond is not a nuisance per se.

Holke v Herman.

4. ———: PETITION: CAUSE OF ACTION. And a petition in which the allegations relied on to show that a pond would be a nuisance are laid as follows, neither complains of a prima facie nuisance nor of something which is likely to become one: "That said pond was intended as it is to hold water the year round, if permitted to be completed, and even as it now is, is and will be a nuisance, injurious to the health and detract from the comfort of plaintiff's family and will render said dwelling house uncomfortable and unfit for habitation; that the water therein will become stagnant and putrid, will breed disease and will constitute a home for frogs and insects and will cause rank vegetation to grow on the banks thereof and will detract from and destroy the usefulness, comfort and beauty of plaintiff's home and the utility of said premises."

5. ———: EQUITY. Courts of equity will restrain a threatened nuisance when it is apparent or extremely probable a nuisance will be created.

6. ———: ———. Nor is the complainant required to wait until some harm has been experienced or to show with absolute certainty it will occur.

7. ———: ———. In the case at bar, the preponderance of the evidence adduced at the trial seems to be that the proposed pond could not, the circumstances and surroundings considered, be so constructed, supplied with water that it would not generate disease germs, be seriously deleterious to the health of respondents and impair their physical comfort in the use and enjoyment of their house and grounds which have been their home for many years.

Appeal from Warren Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED AND REMANDED (*with directions*).

*Landon Rummons* and *C. W. Wilson* for appellant.

(1) The judgment of the lower court should be reversed, because it erred in overruling defendant's objection to the admission of any evidence in the case. Plaintiff's petition does not state facts sufficient to constitute a cause of action. A

pond is not a nuisance per se.   McDonough v. Robbens, 60 Mo. App. 156.   The petition does not charge that it is to be filled with filthy or dirty water, or that it is so located as that it will necessarily be filled with dirty or filthy water.   Or that it is so situated that it can not be kept clean and in good condition.   It proceeds upon the assumption that a deep, well-constructed pond is necessarily and inevitably a nuisance. McDonough v. Robbens, 60 Mo. App. 156; 1 High on Injunctions, sec. 743; 2 Wood on Nuisance, sec. 797.   (2) The answer of defendant, aside from the general denial contained in it, sets up an affirmative defense.   If the facts stated therein are true plaintiffs are entitled to no relief.   But no reply was filed, no denial of the answer was made, and its allegations stand confessed as true.   It was gross error to admit any evidence in the case.   R. S. 1899, sec. 608; State ex rel. v. Rau, 93 Mo. 130; Cordner v. Roberts, 58 Mo. App. 440.   (3) The proposed pond is not and will not be a nuisance per se.   The evidence conclusively shows that it depends entirely upon how the pond is kept as to whether or not it will become a nuisance.   If filled with and kept filled with clean water, it will be no more a nuisance than a large and well-kept cistern.   McDonough v. Robbens, 60 Mo. App. 156. (4) It is a well-settled doctrine that injunctive relief will not be granted unless it is made to appear that a nuisance is imminent and certain.   An apprehension or fear that such may result from a proposed structure, affords no foundation for restraining a citizen by injunction, from controlling and using his own property, for lawful purposes.   McDonough v. Robbens, 60 Mo. App. 156; Warren v. Cavanaugh, 33 Mo. App. 107; Rice v. Jefferson, 50 Mo. App. 468; High on Injunctions, sec. 748, 752, also 743-744; Fallon v. Schilling, 29 Kan. 292.

*Peers & Morsey* for respondent.

(1) The petition in this case is not open to the objection raised in McDonough v. Robbens, 60 Mo. App. 156, and relied on by defendant. The presumption arises in the case at bar that such results as are set out in the petition of the plaintiff will follow the construction of the pond and filling the same with water. The court will take judicial notice of the effect, for it can be plainly seen "that the act which, when completed, will certainly result in a grievous nuisance." Adams v. Michael, 38 Md. 129; 108 Ill. 530; 12 Am. and Eng. Ency. of Law, p. 196. It is not necessary to charge that the pond will be filled with "filthy or dirty water." Stagnant water becomes filthy and rotten, regardless of whether the same runs from a roof or flows from the surface. (2) There are two kinds of nuisances, public and private; a public or common nuisance is one to a whole community; private is that which is to a house, a family dwelling, adjoining property, etc. A nuisance is anything which worketh hurt, inconvenience or damage to another, as if one does an act, in itself lawful, which being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance. Coker v. Birge, 9 Ga. 425; Norcross v. Thoms, 51 Mo. 503. Anything constructed on a person's premises which of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance. 46 Ala. 381; 40 Cal. 426; 8 Ind. 494; 55 Barb. 404. The law does not require us to show that the pond is a nuisance per se; if the use to which it is put, when completed and filled with water, will result in a nuisance, then the court will not permit it to be carried out. It has been abundantly shown that this pond is the result of a malicious scheme on the part of this defendant to force the plaintiff to buy the property of the defendant at an

enormous value; this of itself furnishes sufficient ground to enjoin its erection. See opinion of trial court on motion for new trial, hereto attached. "Any use of property that corrupts the atmosphere with noxious vapors and noisome smells, producing injury to property or health, or impairing the comfortable enjoyment of it, as a dwelling, etc., is a nuisance." Beckley v. Skroh, 19 Mo. App. 79.

GOODE, J.—The plaintiffs and the defendant are adjoining proprietors in the village of Holstein in Warren county. The plaintiffs own a tract of land of irregular shape containing five acres or more on which they had resided twenty-eight years, and the defendant a lot about three hundred feet square, bounded on the west and north by plaintiffs' land. A public road or street runs along the south side of defendant's lot on which fronts his hotel and saloon building near the southeast corner of the lot. West of the hotel building is another house used for a dance-hall and west of that a brick building designated as a tenement house. North of these structures are two outhouses, one just back of the hotel and the other of the tenement house. Behind the dance-hall is a privy with a vault seven or eight feet deep. A drainpipe leads from this north between eighty and a hundred feet to a cesspool. A short distance behind the privy is a building used as a woodhouse, hogpen and for other purposes. North of this stands an icehouse which is east of the cesspool and both are in the part of the inclosure which may be called the barnyard. The barn itself is towards the northeast corner of the tract on a street running north and south. An open drain of slight depth extends northwestwardly down the slope of the ground from the woodhouse and hogpen quite a distance. There are three cisterns on the Herman premises: one just west of the main hotel and saloon building, one near the northwest corner of the tenement house and one immediately west of and behind the

Vol 87 app—9

barn.   The plaintiffs' land does not extend to the road which
runs along the south side of Herman's property, but is cut off
from it by the residence lot of one Kropp; the front yard of
the Holke place abutting on the rear of Kropp's yard. Access
to plaintiffs' house is by a passageway twelve or thirteen feet
wide between the Herman and the Kropp lots as far back as the
latter extends and thence north along the west side of the fence
which runs between Herman's premises and plaintiffs.'   This
fence extends north to the northwest corner of defendant's
property, thence east along its rear line to the street which
runs north and south and bounds it on the east.   The residence
of the respondents' stands on their lot near the northwest cor-
ner of Herman's, facing the west side of the passageway which
gives access to it from the south.   It is therefore only twelve
or fourteen feet from their dwelling to the line fence.   The
south part of the house has two stories and the rear or north
part, one.   A veranda runs along part of the west side which
is used by the family in fine weather as a pleasant place to sit
or lounge.

This action arose because of the defendant's beginning to
excavate a pond in the northwest corner of his lot, forty feet
wide by eighty feet long, or thereabouts, the west bank of
which is thrown up against the division fence, thus forming
the pond immediately east of the dining room and kitchen of
respondents' home and perhaps a foot or two north of the
veranda.   The water would be a distance from the house es-
timated at thirty-five feet by the defendant and twelve to six-
teen other witnesses.   Herman's ground falls off to the north
so that about two-thirds of its surface would drain into or
towards the proposed pond.   It appears that horses, stock,
hogs and poultry often run over the defendant's barnyard; that
the cesspool receives the overflow from the privy and that there
would be a foul drainage into the pond.   The evidence shows

that it would not be fed from any pure source of supply, spring or running stream, and would have no outlet. The defendant claims it is his intention to supply it *chiefly* by the overflow, conducted through drainpipes, from the cisterns which are filled from the roofs of the different tenements on his premises in order that he may take good ice from it. He also claimed that the wash from his buildings and yards would be kept out of the pond by a trench and embankment just south of it. There was testimony tending to show that Herman had endeavored to sell the ground on which the pond was begun, to Dr. Holke, husband of Mrs. Annie Holke, but the sale failed because Holke thought defendant's price too high. The testimony also tended to prove that Herman tried to force Holke to buy by threatening to make a pond on the ground and that his motive for making it was a malicious wish to injure and annoy the respondents. Two women, who had worked in the defendant's household, testified to his declaring that he would make a summer resort for frogs and mosquitos which would not allow the Holkes to sit on their front porch as they were wont to do. Herman denied making these statements, but the court below, who had the advantage of hearing the witnesses testify, found the fact against him. After considerable excavating had been done, a preliminary restraining order was granted. This was made perpetual on the final hearing and the defendant ordered to fill the excavation and restore the premises to the condition they were in before the work was begun. The case is here on appeal from that judgment.

An objection was interposed at the outset of the trial to the admission of any evidence on two grounds: that the petition stated no cause of action and that there was no denial of the allegations of the answer showing the plaintiffs were not entitled to relief. The court overruled the objection; an ex-

ception was duly saved; the ruling is now assigned for error and must be considered. The answer alleges that defendant uses a considerable quantity of ice in his hotel and saloon business, has an icehouse to store it in, was digging the pond in question to take ice from, and, therefore, intended to keep the same filled with pure water chiefly by pipes and drains from the roofs of the buildings on his premises, that it would not be a nuisance, breed disease, cause discomfort to plaintiffs or interfere with their use or enjoyment of their homes, further averring that the water would be fifty or sixty feet from their house. Other averments not necessary to be given were also made. The allegation about the intention to keep the pond filled with fresh, wholesome water from the roofs was new matter constituting a defense to which, in strictness, there should have been a reply. R. S. 1899, sec. 608; State ex rel. v. Rau, 93 Mo. 130; Cordner v. Roberts, 58 Mo. App. 440. However, the point was clearly waived. The defendant filed no motion for judgment on the pleadings but, contenting himself with objecting to the introduction of testimony, proceeded to put in his evidence and support the defense set up in his answer. To avail himself on appeal of an omission like that, the party excepting must stand on the pleadings even when he moves for judgment in the lower court unsuccessfully; he can not introduce his proof as though a reply were in and after defeat on the merits, profit by an erroneous ruling on the motion. Such a practice would be inconsistent with the established rule that the failure to file a replication is of no consequence if the case was tried as though the issues were made up. Nelson v. Wallace, 48 Mo. App. 193.

The objection to the sufficiency of the petition is of more serious import. After charging the ownership of the adjoining premises by plaintiffs and defendant, the progress of the work on the pond and its intended proximity to plaintiffs' dwelling,

the allegations relied on to show it would be a nuisance are laid as follows: "That said pond was intended as it is to hold water the year around, if permitted to be completed and even as it now is, is and will be a nuisance, injurious to the health and detract from the comfort of plaintiffs' family and will render said dwelling house uncomfortable and unfit for habitation; that the water therein will become stagnant and putrid, will breed disease and will constitute a home for frogs and insects, and will cause rank vegetation to grow on the banks thereof and will detract from and destroy the usefulness, comfort and beauty of plaintiffs' home and the utility of said premises." Averments then follow as to the impossibility of computing the damages suffered and to be suffered by plaintiffs and the inadequacy of their legal remedy. There are no statements to show the condition and uses of the defendant's premises, that the pond would receive polluted washings therefrom, would be supplied from impure sources, would not be fed by a running stream or have no outlet, in short, no appropriate averments from which the offensive character of the proposed pond or its deleterious effect on the health of respondents would clearly appear. The answer, by stating the intention to nourish the pond with water conducted through pipes and drains from the roofs of defendant's buildings, would help the omission of the petition to show the supply must be by drainage off the premises if a replication had been filed joining issue as to the sufficiency of the water shed from the roofs to keep the pond fresh.

The fault of the petition is this: It consists of predictions that harmful results will follow the construction of the pond instead of facts sufficient to show clearly the apprehended mischiefs will necessarily arise. The one subsantial fact in it is the allegation that the water will be only twelve feet from respondent's residence; and unless we are prepared to hold

that a pond is per se or prima facie a nuisance so near by, regardless of how supplied with water or the intention to keep it pure, the petition is not good even after judgment. Many complaints have been held insufficient in this class of cases when the reasons for apprehending a nuisance were stated with more fullness than in the one under consideration, among them McDonough v. Roberts, 60 Mo. App 156, in which the court held a bill to enjoin the erection of a dairy, in the vicinity of several residences owned by the plaintiff, bad on general demurrer though there were specific charges that its operation would necessarily engender disagreeable odors, noxious gases and unbearable stenches, that unwholesome vapors would emanate from the dairy itself and decayed animal and vegetable matter in it, poison the air in plaintiffs' houses and render them uninhabitable, with a further averment that no connection could be made between the proposed dairy and a sewer, and that, therefore, foul cesspools would form on the ground and breed contagious sickness in the neighborhood. It is true a petition may sometimes be bad against a general demurrer, but good against an objection to the introduction of evidence.

But in the case cited, this court committed itself to the doctrine well nigh universally upheld, that injunctions will not be granted to restrain a use of property which it is claimed will create a nuisance unless the use to be restrained is *ipso facto* a nuisance or the pleader charges facts from which the court can see that it must become one. Particular and positive allegations of facts are especially insisted on by the authorities in such actions, where the mischief is not actual, only apprehended. The uncertainty of future events, the frequency of groundless alarms and the despotism of needlessly preventing a citizen from using his property in the mode he considers most conducive to his interest or pleasure have properly made the courts extremely conservative in granting such relief and

Holke v. Herman.

it is allowed only when the case is free from doubt both on the pleadings and evidence. In most instances the disposition is to wait until the dread is justified by the event. Experience has demonstrated that a meddlesome, interfering policy represses the spontaneous energy and many-sided activity, which arises naturally from self-interest and differences of taste and inclination among men and constitute the true springs of progress. The spirit of our laws is chary about regulating conduct or restricting action. When this is done it is to preserve, not to abridge, freedom; that is, to prevent one person's proper use and enjoyment of his rights or substance from being impaired by the encroachments of an aggressive neighbor.

The rule of pleading is well stated in the text of 14 Ency. Pleading and Practice, 1144: "Equity is usually reluctant to grant an injunction against a nuisance not yet in existence but only threatened, and will require that a clear case be made out before it will grant relief. Hence where an injunction is sought in such case the bill must allege sufficient facts for the court to see clearly that the thing complained of will constitute a nuisance. It is not enough to allege in general terms that probable injury will result; the bill must state facts and not opinions." Numerous cases arising on various groups of facts can be found that illustrate and support the proposition thus expressed, a few of which may appropriately be noticed.

Thebaut et al. v. Canove et al., 11 Fla. 143, was a case in which an injunction was asked against the erection of a steam mill on the grounds of irreparable injury to complainant's property and their free use of it by the constant noise of the machinery in the immediate vicinity of their residences, the rendering of the air impure and unwholesome, the annoyance from smoke and danger of fire. The opinion says: "It is not enough that a complainant should allege in his bill that the

injury will be irreparable to himself or to his family or prop-
erty, but he must show facts to enable the court to judge if the
injury will be of the character stated." In Kingsbury v.
Flowers, 65 Ala. 479, there was a bill to restrain interments
in a private cemetery near complainant's home, containing
allegations that the drainage from said cemetery, which was
higher than the complainant's premises, had contaminated his
well and that further burials therein would greatly endanger
the health of himself and family, with other similar charges.
A demurrer to the bill was overruled and the defendants, elect-
ing to stand on it, appealed from a final decree. The Supreme
Court, among other things, said: "These averments are too
general and indefinite to authorize the interference of a court
of equity. Facts and circumstances should have been stated
distinctly from which the court could see plainly that if future
interments on these grounds are permitted, there would be a
diminution of the complainant's enjoyment of his dwelling
and at least probable injury to the health of his family. It is
not enough to allege simply that such consequences will result.
There must be such a clear, precise statement of facts that
there can be no reasonable doubt, if the acts threatened are
completed, grievous injury will result. * * * There is
not a fact stated in the bill from which it can be justly inferred
that if the burials on these grounds should be made in the
usual mode or in the mode in which former burials were made,
any injury would result to the complainant. * * * With-
out the averment of special circumstances from which the court
can be satisfied that future burials will most probably result
in a nuisance from which the complainant will suffer special
injury, irreparable by the ordinary remedies of law, there
should not be interference to restrain them." To the same
effect is Bunne v. City of Austin, 77 Texas 139, where the bill
was also against a cemetery. After stating that a cemetery was

Holke v. Herman.

not a nuisance per se, but might become so from its locality or the manner of using it, the opinion proceeds: "The inquiry in this case is, does the petition allege the existence of such facts as show with reasonable certainty that a nuisance will be brought into existence? * * * There is no averment whatever as to the contemplated mode of sepulture." There were profuse statements in the bill as to the contamination of the atmosphere and water which would ensue if burials were permitted and that complainant's premises would be made sickly and they deprived of the use and enjoyment of them, but these were designated as "conclusions" and not such, either, as would necessarily result from the facts stated. A demurrer to the bill was sustained.

"When the matter complained of is not in itself a nuisance, when it is not in its very nature hurtful to others, when it does not of necessity threaten to impair materially the health and comfort of those who may live near it, and the fact that it is a nuisance has not been established at law, the court abstains from interference unless a case of pressing necessity is shown by the bill and by the proof," was the language of the court in Booser v. Randolph, 7 Porter, 238.

Adams v. McMichael, 38 Maryland, 123, declared the same rule. "It is not enough for the parties complaining simply to allege that particular consequences will follow the erection of the factory; that may be their opinion or apprehension, but facts must be stated so that the courts can see and determine whether the allegation is well founded."

In Davis v. Adkins (Ky.), 35 S. W. Rep. 271, a petition against the erection of a schoolhouse and privy, because the flow of water from them would ruin complainant's spring, was held properly dismissed there being no averments making it reasonably clear that such a drainage into the spring would inevitably result.

Rounsaville v. Kohlheim, 68 Ga. 668, was where the relief was sought against the construction of a large stable adjoining the plaintiff's home, the charges being that filth, flies, vermin, stenches, noxious vapors, the stamping of horses and other annoyances would impair the health of plaintiff and his family, and their enjoyment of their home. The court said: "In this case all the allegations except the mere location are speculative and contingent. The bill was therefore without equity and should have been dismissed."

The Supreme Court of Indiana reversed a decree entered on a demurrer to a complaint to enjoin defendant from converting his dwelling house, twenty-eight feet from the plaintiff's front door, into a blacksmith shop which alleged that the noise, clatter, smoke, smells, accumulation of filth and vehicles and horses around the shop would be unbearable by plaintiff's family, injurious to their health and greatly damage him. The only material averments, it was held, were the location of the respective premises of the plaintiff and defendant and the latter's intention to turn his into a blacksmith shop, and that the additional matter was mere conclusions which the demurrer did not admit to be true. "To hold the complaint good would be to hold that any complaint would be good to enjoin any legitimate business by alleging that the complainant owned and resided upon a lot and the adjacent lot owner was about erecting a building on his lot in close proximity to the complainant's residence to carry on mercantile or other lawful business which would be patronized by the public, and drawing like inferences to those drawn in this complaint, without averring that the person threatened or intended conducting the business in an improper way or that it could not be conducted at such place without injury and danger to the complainant." Bowen v. Mauzy, 117 Ind. 258. We deem it unnecessary to multiply quotations to support a rule so well established.

The following authorities are also in point. Rouse v. Martin, 75 Ala. 514; Kirkman v. Handy, 11 Humph. 406; St. James Church v. Arrington, 36 Ala. 546; Begien v. City of Anderson, 28 Ind. 79; Musgrove v. St. Louis Church, 10 La. Ann. 43; New Orleans v. Wardens, 11 La. Ann. 244; Ellison v. Commissioners, 5 Jones Eq. 57; Lake View v. Letz, 44 Ill. 81; Lake View v. Rose Hill, 70 Ill. 191; Cleveland v. Gas Light Co., 30 N. J. Eq. 206; Rhodes v. Dunbar, 57 Post. 274; Harrison v. Brooks, 20 Ga. 537; Turnpike Co. v. Yuba, 13 Cal. 190; Railroad Co v. Ward, 21 Black U. S. 494; Heeg v. Licht, 80 N. Y. 579; Dillsworth's Appeal, 91 Pa. St. 274; Earl of Ripon v. Hobart, 3 Myl. & K. 169; Wood on Nuisances, secs. 796, 797 and 798, and cases cited. The learned author of that work summarizes the authorities on the subject, as follows: "The bill must set forth such a state of facts as leaves no room for doubt upon the question of nuisance, for if there is any doubt upon that point the benefit of it will be given to the defendant. * * * Great care should be observed in drawing complaints to restrain a threatened nuisance to set forth fully and particularly its value and character; in what the nuisance will consist and the knowledge of the plaintiff as to the use in the manner described, as well as the nature and character of the injury which will result to the plaintiff therefrom. These facts must not rest upon belief but upon the actual knowledge of the plaintiff which must be stated in the complaint as well as the source from which it is derived."

The only case taking the opposite view which we have found is Aldrich v. Howard, 7 R. I. 87. There the allegations of the bill are much fuller than here, but the opinion treats the predictions as to the harmful results which would follow, as themselves issuable facts, a view which we consider unsound both on principle and authority.

In the case in hand, if a cause of action is not made out

by the allegations about the size of the pond and its proximity to the respondent's house, none is stated at all, for the remainder of the petition is expressions of opinion as to what will happen, the very kind of pleading which is condemned as futile. It would be plainly arbitrary to hold that a pond in a short distance of a residence, however undesirable, will be necessarily or with reasonable certainty a nuisance, on account of its deleterious effect on the health or comfort of the occupants. It may or may not be, according to the kind of water flowing into it and the care with which it is cleansed and kept. Pools of water in grounds or gardens near houses are sometimes regarded as refreshing and healthy. A pond is not a nuisance per se and it is equally manifest that it need not be one under the circumstances disclosed. It is not inevitably nor probably harmful, nor even annoying to those in its vicinity. On the other hand, if filled with polluted drainage, allowed to become putrid and stagnant, it will be very obnoxious and dangerous. Allegations might have been made by the plaintiffs stating how the one in question must get its water, the lack of a pure source, that it could not be kept perennially fresh and other appropriate matters on which issue could have been joined and testimony heard. As it is, the petition neither complains of a prima facie nuisance nor of something which is highly likely to become one. We are therefore constrained to decide that it stated no cause of action and that error was committed in receiving testimony over the defendant's objection.

The nature of the evidence, which is of much wider scope and more impressive than the allegations, forbid us to dismiss the petition on this appeal. The testimony before us tends strongly to prove that the pond if completed would be a receptacle for the filthy wash and filthy drainage from the appellant's premises and that it must be supplied in that way or not at all.

No stream or spring would feed it nor would there be an outlet. The slope of Herman's ground, the uses to which he puts it, the limited roof space on his buildings and the cisterns to be filled from it, argue strongly and convincingly, as the record now is, against his claim that the water would be kept sweet and uncontaminated.    The conclusion reached by the chancellor who tried the cause concerning that question, as well as the defendant's motive in making the pond, are well supported by the proof.    We are disposed to follow the doctrine that a man's motive in making a certain use of his premises is immaterial, provided the act is lawful, as being in harmony with the general principles underlying the property right, though it is not accepted in all jurisdictions.    Rockwood v. Wilson, 11 Cush. (Mass.) 221; 16 Am. and Eng. Ency. Law, 930; South Royalton Bank v. Suffolk Bank, 27 Vt. 505; Mahon v. Brown, 13 Wend. (N. Y.) 261; 28 Am. Dec. 461; Bonnell v. Smith, 53 Iowa 281; Olmsted v. Rich, 6 N. Y. 326.

So holding, we would not consider the defendant's purpose to annoy the plaintiffs as ground for restraining him; but the fact that he thought it would annoy them is a circumstance to be weighed in determining whether it would be a nuisance or not.    While we hold that making the pond as located is prima facie a lawful act and that it is incumbent on the respondents to show facts clearly stated in the pleadings and proven by the evidence that it will with reasonable certainty impair their health and comfort if they would have it restrained, we likewise hold that if such is made to appear they are entitled to relief by injunction.    The doctrine so often stated, that courts of equity are reluctant to restrain a threatened nuisance involves the converse proposition, that they will do so when it is apparent or extremely probable a nuisance will be created.    Beach on Injunctions, sec. 1071; Wood on Nuisances, secs. 100 and 796; Ryan v. Copes, 11 Richardson's Law, 217; 73 Am. Dec. 106; Ross v. Butler, 19 N. J. Eq. 294;

Brady v. Weeks, 3 Barb. 157; Lewis v. Stern, 16 Ala. 214; McKeon v. See, 51 N. Y. 300; Adaues v. Popham, 76 N. Y. 410.

The reasons for preventing a prospective mischief are at least as cogent as those for abating a present one. In the latter instance the courts act more readily because they are sure of their ground; the evil is visible. But the call for protection against an apprehended injury, reasonably certain to befall, is as imperative as that for relief from one now felt. Nor is the complaint required to wait until some harm has been experienced or to show with absolute certainty it will occur. One requirement would make the remedy largely useless and the other impracticable. Miley v. O'Hearn, 18 S. W. Rep. (Ky.) 529. While perhaps proof that it is inevitable or will necessarily ensue may be properly demanded, when nothing more than discomfort is anticipated, when danger to health or life is threatened, a reasonable certainty is enough. Wood on Nuisances, sec. 100. A party does not have to stand by until his family have sickened or died. In the case at bar, the preponderance of the evidence adduced at the trial seems to be that the proposed pond could not, the circumstances and surroundings considered, be so constructed, supplied with water and used that it would not generate disease germs, be seriously deleterious to the health of respondents and impair their physical comfort in the use and enjoyment of the house and grounds which have been their home for many years. If this is true it should not be tolerated. If, however, it may be so filled and kept by proper care as to cause no mischief, the defendant should be permitted to make use of it in that way.

It is not necessary, nor do we think it would be just, to dismiss the petition. We may give the respondents' leave to amend. Stevenson v. Edwards, 98 Mo. 622. The judgment is therefore reversed and the cause remanded with directions to permit the plaintiffs to re-plead, if so advised, on payment of the costs of the trial and appeal. All concur.