WILLIAM S. WOOD, Respondent, v. ANDREW B. CRAIG, Appellant.

Kansas City Court of Appeals, November 16, 1908.

1. **WATER AND WATERCOURSES: Diversion of Stream: Return to Original Channel: Lower Proprietor.** The owner of land may divert a stream from its usual course to another provided he returns it to its original channel before it leaves his premises; but this rule will not justify such a diversion as to cause an overflow onto the land of the lower proprietor.

2. ———: ———: ———: ———: **Injunction.** An injunction is a proper remedy to prevent such wrongful overflow onto the lower proprietor even though no damages have as yet been inflicted.

Appeal from Atchison Circuit Court.—*Hon. William C. Ellison,* Judge.

AFFIRMED.

*John P. Lewis* and *C. A. Anthony* for appellant.

(1) A riparian owner may divert the water flowing through his land, provided he returns it to the original channel when it leaves his land: 28 Am. and Eng. Ency. Law (1 Ed.), 978, 982; 3 Kent (12 Ed.), 439; Norton v. Volentine, 39 Am. Dec. 223; 20 Am. and Eng. Ency. Law (2 Ed.), 362. (2) This ditch drain empties into the old bed of Tarkio creek, a natural watercourse, and the drainage for agricultural purposes. R. S. 1899, sec. 6962; Gray v. Schriber, 58 Mo. App. 178. (3) It is well settled in this State that waters overflowing the banks of a stream must be regarded as surface water. Edwards v. Railroad, 97 Mo. App.

109; Abbott v. Railroad, 83 Mo. App. 280. (4) The evidence shows that the proposed ditch is practical. (5) Injunction will not be applied in doubtful cases. Baker v. McDaniel, 178 Mo. 469; Holke v. Herman, 87 Mo. App. 134, 178 Mo. 474; Flint v. Russell, 5 Dill. 158; McDonongh v. Robbens, 60 Mo. App. 156, 159; Holke v. Herman, 87 Mo. App. 135. If the evidence be conflicting the injury doubtful, this extraordinary remedy will be withheld. Parker v. Winnipisiogee Lake, etc., 2 Black (U. S.) 552; 4 Miller 319, and cases cited; Blount v. Spratt, 113 Mo. 54; Dalrymple v. Craig, 149 Mo. 351; Beck v. Kallmeyer, 49 Mo. App. 576.

*W. R. Littell* and *L. D. Ramsey* for respondent.

(1) It is a maxim of the law that in a living stream the water runs and ought to run as it has been accustomed to run. To interfere in any material manner or extent is a nuisance *per se*. Abbott v. Railroad, 83 Mo. 276; Cooley on Torts, p. 585. (2) Injunction is the remedy. Gould on Watercourses, secs. 513, 517, 519. (3) Every enjoyment by appellant of his own property which violates the rights of another is in an essential degree a nuisance. George v. Railroad, 40 Mo. App. 433; Eaton on Equity, 593; Cooley on Torts (2 Ed.), 706; Abbott v. Railroad, 83 Mo. 271; O'Connell v. Railroad, 13 L. R. A. 397; Willets v. Railroad, 21 L. R. A. 609; Hasher v. Railroad, 60 Mo. 330.

ELLISON, J.—This is a proceeding in equity to enjoin defendant from digging a ditch and diverting the course of water so as to cause it to flow upon and over plaintiff's lands. The decree in the trial court was for the plaintiff.

It appears that plaintiff and defendant are adjoining owners of large tracts of bottom lands in the valley of the Tarkio river. Plaintiff's lands were south of and were lower than defendant's. The "East Tarkio"

river came into defendant's land near the northeast corner and ran a very crooked course in a southwesterly direction through his land until it reached plaintiff's land at a point about midway of his north and defendant's south line; thence on its crooked course was the boundary line between plaintiff and defendant,—the result being that from a point in the center to the west line plaintiff's north boundary was the river, his land would extend up apparently (as it would appear on a map) into defendant's land, and defendant's south line being on the river, his land would apparently extend down into plaintiff's. As just stated, this river was exceedingly crooked; it would run for a space in one direction and then turn sharply back, but its general course was to the southwest. There was a branch which came into defendant's land on the east side at about the line between him and plaintiff. It ran north through defendant's land, bearing some to the west, on across a public road into lands of Rankin and then emptied into the East Tarkio river a short distance north of defendant's north line. Prior to the trouble between plaintiff and defendant the latter cut a ditch from this branch along his north line, between him and Rankin, for a short distance west until it emptied into the East Tarkio. The only effect of this was to connect the branch with the Tarkio a short distance south of where it did before he cut the ditch. Thus it is seen the waters of the branch found their way into the Tarkio up in the northeast corner of defendant's land, it being remembered that plaintiff's laid south of his tract. It should be here stated that the waters (aside from this branch) which generally flowed in the East Tarkio had been diverted to the West Tarkio river by a large drain ditch dredged out, so that the only water left in the East Tarkio was that which came from the branch just described and the drainage from the vicinity in time of rain.

In this situation of affairs defendant began the construction of the ditch (now sought to be enjoined) at the branch on the southeast corner of his land running southwest until it came to or near plaintiff's northeast corner, thence due west, just north and near his south line which divided his and plaintiff's lands, intending to run it into the East Tarkio at a point (one of the sharp turns) just north of where that stream becomes the dividing line between plaintiff and defendant. The effect of this would be to stop the water now flowing in this branch through his land from the southeast corner in a slight northwesterly direction to where it connects with the East Tarkio on the north side of his land thence running in that river, in its crooked course, through the body of his tract, and divert it through the proposed ditch into the East Tarkio within a few feet of where it strikes plaintiff's land.

It was shown that if that is done, on account of plaintiff's land being lower, the water would probably break out of the ditch at the northeast corner of plaintiff's land where the ditch turns from a southwest to a due west course as just described,—but that if it did not, it would inevitably break over at the point further on where it strikes the East Tarkio where that stream becomes the dividing line between the two tracts. There are two reasons why the water would break over at the latter point; one is that the bed of the Tarkio has filled up so that it is about on a level with plaintiff's land; and the other, that the ditch would strike the sharp turn in the Tarkio at so near right angles that the bank of that stream would be an obstruction at that point.

It will be observed from the foregoing statement that defendant's operations are confined within the boundaries of his own premises. It is the law that the owner of land through which a watercourse runs may divert the water from its usual channel to some

other course, provided he returns it into the original stream before it leaves his premises. The rule is thus expressed in Norton v. Volentine, 14 Vt. 239: "The dominant proprietor may divert the water from its usual channel, but if it is returned to the same channel before it reaches the land of the next proprietor below, no one can complain."

But that rule will not justify one in so diverting the stream, though the change is made altogether on his own land, as to cause it to discharge on or overflow onto the land of a lower proprietor. [Porter v. Durham, 74 N. C. 767; Hargreaves v. Kimberly, 26 W. Va. 787; Learned v. Castle, 78 Cal. 454. See also Railroad v. Carr, 38 Ohio St. 448.]

Although the act is not completed and the damage which will result therefrom has not been inflicted, yet injunction is a proper remedy to prevent the wrong. [Gould on Watercourses, secs. 513, 517, 519, 534, 536; Holke v. Herman, 87 Mo. App. 125, 142; Caskey v. Edwards, 128 Mo. App. 237.]

The rule of equity and the principles of law being as herein indicated, we find the evidence justified the trial court's conclusion, and the decree is affirmed. All concur.