**VILLAGE OF CLAYCOMO, Missouri, et al., Appellants,**

v.

**CITY OF KANSAS CITY, Missouri, et al., Respondents.**

No. WD 32318.

Missouri Court of Appeals,
Western District.

June 8, 1982.

John Gregory Dorsey, Kansas City, for appellants; Dorsey, Bannon & Dorsey, Kansas City, of counsel.

Aaron A. Wilson, City Atty., Walter J. O'Toole, Jr., Asst. City Atty., Kansas City, for City of Kansas City.

John Ashcroft, Atty. Gen., Edward F. Downey, Asst. Atty. Gen., Jefferson City, for Dept. of Natural Resources.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Plaintiffs, Village of Claycomo, Phyllis J. Griggs, and Billy Gene Edwards, brought suit on the theory of a nuisance, for a permanent injunction against Kansas City from the construction and operation of a solid waste landfill, and the construction of a levee adjacent to the north side of Big Shoal Creek, which forms the southern boundary of Claycomo, the area of the proposed landfill. Kansas City's motion to add the Department of Natural Resources of Missouri as a necessary party was sustained, and thereafter, the first amended petition prayed that a permit to construct and operate the landfill which DNR had issued to Kansas City be revoked.

The trial court sustained the motions of respondents to dismiss the amended petition for failure to state a claim upon which relief could be granted and DNR's additional claim of lack of subject matter jurisdiction. Before that issue is reached, consideration will be directed toward whether plaintiffs have standing to sue. Kansas City challenges the standing of all plaintiffs, but DNR limits that challenge to Phyllis J. Griggs.

The pertinent allegations of the first amended petition, paraphrased, are these: Kansas City owns the land upon which, by a resolution it passed in 1974, it proposed to use for a sanitary landfill. About June, 1975, Kansas City received an operating permit for the landfill from DNR based upon a preliminary report submitted to it. A levee was commenced along the south side abutting Big Shoal Creek to protect the site from inundation from the frequent floods of that creek. The plans called for construction of another levee north of the proposed landfill to divert surface water from the landfill so it and other surface water would discharge into the creek. The landfill site is zoned by Kansas City as R–A–Agricultural. Claycomo, which abuts the landfill site, is zoned single family dwellings and is so developed. The City of Pleasant Valley, east of the landfill site, has also been developed for single family dwellings. Kansas City's corporate limits surrounding the landfill site north of Big Shoal Creek has been zoned R–A–Agricultural. A permissible use of the district is for single family dwellings and there have been many single family dwellings erected adjacent to or in close proximity to a portion of the landfill site.

Plaintiff, Phyllis J. Griggs, is a resident of Kansas City, Missouri, whose residence is in Clay County, Missouri. Billy Gene Edwards is a property owner in Clay County, Missouri, a resident of Claycomo, and his residence is adjacent to Big Shoal Creek, and across it from the proposed sanitary landfill dump.

By paragraph 6 of the petition, it is pleaded that DNR has rules authorized by § 260.225, RSMo 1978, which require that a landfill site be in compliance with local zoning laws, and Kansas City has failed and refused to secure a permit from the Board of Zoning Adjustment "and is not acting in compliance with its own Zoning Ordinance and hence unlawfully in constructing the

said sanitary landfill dump, which is a refuse dump."

The plans for the landfill provide for the construction of levees, the natural result of which will cause flooding of a portion of the area within Claycomo's boundaries, will change the normal flow of water into Big Shoal Creek as to cause it to change course farther to the south, so that Claycomo's northern boundary (which is a part of Big Shoal Creek) will be moved southward, thereby decreasing Claycomo's area without the consent of its inhabitants or its Board of Trustees.

In paragraph 8 of the petition, it is alleged that the "construction and maintenance of the proposed sanitary landfill dump at the aforementioned site will adversely affect the health, well-being and property of the inhabitants of plaintiff, Claycomo, Missouri, as well as the residents of that portion of defendant, Kansas City, Missouri, as is adjacent to or in proximity to such dump or the roads used for ingress and access to such dump, in that: among other effects, said dump will attract and promote the breeding of rats, mice and other vermin; scavenger birds will be attracted to and congregate in the area; the air will be subject to pollution from the fires that break out in such dumps from spontaneous combustion and other causes, noise and dust will emanate from the dump and access roads by reason of the large trucks, tractors and other equipment used in the operation of a dump; the leachate from such dump will contaminate the waters of Big Shoal Creek so as to render such creek unusable and a threat to the health of any children attracted to said creek, said leachate will also contaminate the subterranean waters which flow to the proposed site of artesian wells to be sunk and used as a water supply for the residents of plaintiff, Claycomo, Missouri." In paragraph 9 of the petition, it is alleged that contrary to the provisions of § 260.205, DNR approved the application of Kansas City for the operation of the dump and issued a permit "although the facility and area failed to conform with the provisions of Sections 260.200 to 260.245, R.S.Mo.1969, as amended, and the rules and

regulations adopted thereunder and, further, upon notice of the said failure of compliance, the Department of Natural Resources has not revoked the said permit as further provided in said section."

The petition is not divided into counts setting up the claims to relief of the separate plaintiffs. Their standing to sue and their allegations must be separately considered.

■ As to plaintiff, Phyllis J. Griggs, the allegation of proximity of her property to the proposed landfill site lacks the specificity to show that she has a legally protectible interest, a factor said to be often considered in *Schweig v. City of St. Louis*, 569 S.W.2d 215, 220 (Mo.App.1978). The trial court did not err in dismissing the petition as to her because of her lack of allegation of facts showing of proper standing to sue.

■ Billy Gene Edwards does, however, allege sufficient facts showing he has standing to maintain the action to enjoin the alleged *private* nuisance of the proposed landfill as against Kansas City by reason of being a property owner in Clay County, a resident of Claycomo, with his residence adjacent to Big Shoal Creek across it from the proposed landfill. He would have had standing as a "person aggrieved" under Rule 100.08, in the uncontested case to challenge DNR's issuance of a permit to Kansas City to construct the landfill. As to Edwards, however, the petition pleads mere conclusions as to approval of the permit contrary to § 260.205, and the failure to conform with the provisions of §§ 260.200 to 260.245. Although these sections have many requirements for the issuance of a permit, *no facts* are alleged showing a violation of any provision, which, if proved, could be a basis for ordering the permit revoked. Although it is not necessary to plead a statute by number, it is necessary to plead the facts which bring the case within its purview. *Newson v. City of Kansas City*, 606 S.W.2d 487, 490[3–5] (Mo.App. 1980); cf. *Peer v. M.F.A. Milling Co.*, 578 S.W.2d 291, 295[3] (Mo.App.1979), and this rule of the pleading of facts constituting a

violation of statute goes back to *Jones v. Chicago, B. & Q. R. Co.*, 343 Mo. 1104, 125 S.W.2d 5, 12[3, 4] (1938). The trial court did not err in dismissing Edwards' petition as against defendant, DNR.

■ The trial court did not err in dismissing Claycomo's petition against defendant, DNR. Claycomo, being a municipality, does not possess the standing as an "aggrieved person" to seek administrative review (by way of injunction) under Rule 100.08, to revoke DNR's permit to Kansas City to construct the landfill as a noncontested matter. Claycomo's standing, as a political subdivision, to seek administrative review in an uncontested matter was ruled adversely to it in the case of *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 912 (Mo.App.1978), where it is said, "The law has developed, perhaps anomalously, that the provisions of § 536.150 of the Administrative Procedure Act [Rule 100.08] for the judicial review of a noncontested case do not apply—in the absence of express statutory authority—to accord status to a political subdivision of the state [in this case, a school district] to dispute an underassessment of real property by a county board of equalization. *State ex rel. St. Francois County School District R–III v. Lalumondier*, 518 S.W.2d 638 (Mo.1975). The court noticed that Article V, § 22 speaks of review of administrative decisions which affect *private rights*, but that the claim of the school board subdivision was a contention of public right which came neither within the constitutional definition of *private right* nor that of *any person* entitled to judicial review of a noncontested case under § 536.-150."

From the allegations of the petition, although the brief of *all* appellants denominates it to be a *private* nuisance, it seems that as to the now remaining plaintiff, Edwards, that the prospective operation of the landfill might be found to be a private nuisance; as to the Village of Claycomo, it could only be a *public* nuisance as affecting all of its residents. (See the excerpts, paragraph 8 of the petition, above set forth.) Claycomo, in asserting a public right, cannot, under the *Stewart* case, supra, have administrative review under Rule 100.08. However, it may by original suit for injunction and upon its allegations that the prospective operation of Kansas City's landfill will be a public nuisance have that issue determined. See the discussion in the *Stewart* case, page 913[23–25]; and note the case of *Village of Barrington v. Village of Hoffman*, 81 Ill.2d 392, 43 Ill.Dec. 37, 410 N.E.2d 37 (1980), holding that two villages had standing to sue another to challenge its zoning ordinances permitting the development of real estate for an open-air music theater, where the allegations in part were that it constituted a public nuisance, and other allegations were that the theater would cause direct, substantial and adverse effects upon the performance of their municipal objections. See also *City of Birmingham v. City of Fairfield*, 375 So.2d 438 (Ala.1979), where although holding that the evidence did not support an injunction for a public or private nuisance, the allegations of the petition were sufficient to withstand a motion to dismiss.

■ There is no basis for relief stated by remaining plaintiffs, Edwards and the Village of Claycomo, in paragraph 6 of the amended petition that Kansas City has violated its own ordinance, § 65.210, in failing to secure a permit for the proposed landfill from its Board of Adjustment, and has further failed to comply with the rules of DNR requiring that the selection of a site for a sanitary landfill be in compliance with local zoning laws. [As above held, Claycomo does not have standing to have reviewed the issuance of a permit by DNR under Rule 100.08.] Although there is no case in this state directly ruling the contention of failure of Kansas City to secure a permit from its own Board of Adjustment, there are analogies derived from the granted power of a municipality to acquire property for public uses by statute and through the exercise of the power of eminent domain. In *State ex rel. St. Louis Union Trust Co. v. Ferriss*, 304 S.W.2d 896, 900 (Mo. banc 1957), it was held that the City of Ladue, by its zoning ordinance, could not restrict the

erection and location of school buildings because that application of zoning ordinances conflicted with the school district's statutory power to condemn lands for that purpose. In *State ex rel. Askew v. Kopp*, 330 S.W.2d 882, 888 (Mo.1960), it was held that a city could construct sewage disposal facilities outside its limits pursuant to a power conferred by state law regardless of zoning ordinances restricting that use. In *State ex rel. Gower v. Gee*, 573 S.W.2d 107 (Mo.App.1978), the city, pursuant to its power to purchase or condemn lands for the purpose of sewage disposal, was not subject to Buchanan County's zoning ordinances, and the county board of adjustment was without jurisdiction in the matter. Here, Kansas City has the power to acquire land for the purpose of refuse disposal under Articles 1(9) and 1(28) of its charter, and § 82.240, R.S.Mo.1978, and its own Board of Adjustment would have no authority over the exercise of that power, or the use by Kansas City of its own land, as here proposed, for that purpose.

■ The factual allegations of the remaining plaintiffs' petition against Kansas City, above set forth, are couched in terms of a nuisance being created in the future— an alleged threatened nuisance [by fair intendment, a private nuisance as to Edwards and a public nuisance as to Claycomo]. The early case of *Holke v. Herman*, 87 Mo.App. 125 (1901), held that a petition for injunction against the construction of a pond was insufficient because "It consists of predictions that harmful results will follow the construction of the pond instead of facts sufficient to show clearly the apprehended mischiefs will necessarily arise." (Page 133.) And, at page 134, referencing the earlier case, *McDonough v. Roberts* [sic], 60 Mo.App. [156] (1895), "[I]njunctions will not be granted to restrain a use of property which it is claimed will create a nuisance unless the use to be restrained is *ipso facto* a nuisance or the pleader charges facts from which the court can see that it must become one." In the *Holke* case, however, the court permitted the plaintiffs to amend the petition on remand. In *Mason v. Deitering*, 132 Mo.App. 26, 111 S.W. 862 (1908),

the court held that a petition for injunction against erection of a three story livery stable in a residential district was not subject to demurrer where it was alleged 60 to 70 horses would be kept, a large number of stable hands would work around it day and night, horses and wagons continually would come in and out, manure would be deposited in and about the stable which would breed insects and disease germs, and obnoxious gases and odors would result, all of which would interfere with the health, lives and comfort of plaintiffs' families. It was there said that the bill must state such facts as to show a reasonable certainty that the nuisance will result if not enjoined. These cases turn upon the sufficiency of the evidence: *Nothaus v. City of Salem*, 585 S.W.2d 244, 245 (Mo.App.1979), holding that the evidence was "largely speculative and conclusionary and consisted of mere apprehension of future injury or damage." *Aufderheide v. Polar Wave Ice & Fuel Company*, 319 Mo. 337, 4 S.W.2d 776 (Mo. banc 1928), held that plaintiff had not sustained the burden of proof that the method and manner of operation of an ice plant would necessarily result in the annoyances alleged. In *Lee v. Rolla Speedway, Incorporated*, 494 S.W.2d 349, 354[1] (Mo.1973), the trial court likewise heard evidence and found against plaintiffs by applying the rule in the *Aufderheide* case of burden of proof upon a plaintiff to establish his right to relief " 'clearly' " and " 'conclusively' ", and to show that the injury will be inevitable and undoubted. The *Lee* case held that the applied burden of proof was in error, that it "should have considered it in the light of whether or not the evidence demonstrated a likelihood that the operation of the track would produce such invasion of the rights of neighboring landowners as would call for the granting of injunctive relief. (Citing cases)." Because of this error and the fact that the race track had been completed and was in operation, and its actual effect could be better adjudged rather than on a theoretical basis, the *Lee* case was reversed and remanded.

In this case there are sufficient factual allegations of threatened harm, all taken as true for the purposes of the motion to dismiss, to state a claim for injunctive relief, in that it could be determined [under the *Lee* case, supra] that there was a reasonable likelihood that the operation of the sanitary landfill would produce an invasion of the rights of neighboring landowners [Edwards and Claycomo]. Because DNR, as above held, is properly no longer in the case, it is unnecessary to determine if venue was proper as to it in Clay County.

The judgment of dismissal of the claims of Phyllis J. Griggs and those against DNR are affirmed. The judgment of dismissal of the claims of Billy Gene Edwards and the Village of Claycomo against Kansas City are reversed, and the case is remanded for further proceedings.

All concur.